UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE


DELMAN DAVIS,                          )
                    Petitioner,        )
                                       )
v.                                     )        NO. 2:03-CR-62
                                       )        NO: 2:10-CV-108
UNITED STATES OF AMERICA,              )        Judge Greer
                    Respondent.        )


## <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on petitioner Delman Davis's ("Petitioner" or "Davis")

motion to "Correct And/Or Vacate His Unlawful Conviction And/Or Sentence" pursuant to 28

U.S.C. § 2255, [Doc. 848]. The United States has responded, [Doc. 865], and petitioner has

answered the government's response, [Doc. 870].  Also pending is petitioner's "Motion Pursuant

to Rule of Evidence 201(b),(d), (e) & (f) For The Court To Take Judicial Notice And To Hold A

Hearing On Same," [Doc. 859],  his "Motion Requesting The Court To Determine Whether

Petitioner Is Actually Innocent Of Being A Lawful Career Offender," [Doc. 860], and "Suggestions

In Support Of Petitioner's Actual Innocent Claim Of Being A Career Offender," [Doc. 863].  For

the reasons which follow, petitioner's motions, [Docs. 859, 860, 863] will be DENIED, his motion

pursuant to 28 U.S.C. § 2255 will be DENIED, [Doc. 848], and this action will be DISMISSED.

Pursuant to Rule 8 of the Rules Governing Section 2255 Proceedings For The United States

District Courts, the Court has determined that the pleadings on file and the records of the case show

conclusively that Davis is not entitled to relief under § 2255 and there is no need for an evidentiary

hearing.  His request for an evidentiary hearing is, therefore, likewise DENIED.

# I. **Procedural And Factual Background**

Davis and Eric Serna were indicted by the federal grand jury on August 26, 2003, [Doc.13]. On October 28, 2003, the grand jury returned a superseding indictment charging Davis, Serna and seven co-defendants with conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 841(a)(1), [Doc. 64]. After six days of trial in November, 2004, Davis was convicted of a lesser-included offense of conspiracy to distribute and possess with intent to distribute 500 grams or more of cocaine, [Doc. 544].

The probation office prepared a Presentence Investigation Report ("PSR"). The PSR determined petitioner's offense level to be 28; however, because he had at least two prior felony convictions for drug offenses, Davis was found to be a career offender pursuant to USSG § 4B1.1, resulting in an enhanced offense level of 37. Petitioner had nine criminal history points for a criminal history category of IV; again, though, his criminal history category was enhanced to VI because of his career offender status. With an offense level of 37 and a criminal history category VI, his guidelines range was 360 months to life imprisonment. He was subject to a statutory mandatory minimum of ten years of imprisonment.

Although Davis did not object to the PSR, he did argue for a variance from the guidelines range on the basis that the career offender provision of the Sentencing Guidelines resulted in a sentence that was "wholly unwarranted," [Doc. 777 at 2]. He specifically requested the Court not to apply the career offender provision and sentence him within a range of 110 to 137 months, [*Id.*].[1] At sentencing, the Court rejected an argument that a downward departure under the Guidelines was

---

[1] Petitioner erroneously states in his § 2255 motion that his guidelines range would have been 78 to 97 months, except for the career offender enhancement. *See* page 15 bleow.

appropriate but did vary downward because of petitioner's cooperation with the government after his conviction and imposed a sentence of 262 months, 98 months below the bottom of the applicable advisory guidelines range. Judgment was entered on March 23, 2007, [Doc. 787], and Davis timely filed a direct appeal. The Sixth Circuit affirmed on June 2, 2009. *See United States v. Davis*, 332 Fed. App'x 247 (6th Cir. 2009). Petitioner then timely filed the instant § 2255 motion on May 13, 2010.

The relevant facts were summarized in the PSR:

8.  Gorge Duarte testified that he had been involved in selling cocaine from 1998 through 2003. He identified a notebook, where he recorded drug sales by the dollar amount sold, and money owed. He stated that one of the entries showed where he had sold a kilogram of cocaine to defendant Davis, at the price of $24,000. Duarte reflected that the entry showed defendant Davis still owed him $14,000. The entry for defendant Davis was recorded as "Shoobie." Gorge Duarte stated he first met the defendant in jail in 1998, and they met again in 2002, while meeting with Cole Butler at Kentucky Fried Chicken in Johnson City, Tennessee. He gave his phone number to the defendant, and defendant Davis called about purchasing drugs. Duarte testified that he fronted the defendant a kilogram of cocaine, to see how he could sell it. He indicated he fronted Davis a kilogram a week for seven to eight months. Duarte identified several entries where the price for a kilogram of cocaine was written, then marked off when paid. He also stated that he was arrested in March of 2003, and his brother, Guadalupe Duarte, took over the business.

9.  Eric Serna testifed that he first met Delman Davis in late May or early June of 2002. He stated he accompanied Gorge Duarte to the defendant's detail shop to pick up the payment for a kilogram of cocaine. He stated he went there because Duarte had fronted the defendant a kilogram of cocaine, and he went many more times to pick up money for the fronted drugs. He confirmed the entry in the notebook, identifying that defendant Davis had one kilogram fronted for $24,000. He also confirmed that the defendant received a kilogram of

cocaine a week, which he delivered to defendant Davis' apartment in Johnson City three or four times. Eric Serna also testified that on August 21, 2003, he met defendant Davis and Trevis Love at the food court at the mall in Johnson City. They were discussing how to find another individual who owed $18,000 to Guadalupe Durate for drugs. Serna offered the defendant $5,000 to collect the $18,000 debt.

10. According to Special Agent Mike Templeton of the Drug Enforcement Administration, agents became aware of the members of the conspiracy in late 2002. Through the use of informants and confidential sources, it was determined that codefendant Gorge Duarte, along with his brother, Guadalupe Duarte; and cousin, Eric Serna, provided kilogram quantities of cocaine and marijuana to other drug distributors. Corroborated evidence supports the conclusion that the defendant was involved in the distribution of three to five kilograms of cocaine. Based upon the proof submitted at trial, defendant Davis will be held accountable for a minimum of three kilograms of cocaine.

PSR, ¶¶ 8, 9 10.

## II.   Standard of Review

This Court must vacate and set aside petitioner's  sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . ."  28 U.S.C. § 2255.  Under Rule 4 of the Governing Rules, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveal the movant is not entitled to relief.  If it plainly appears the movant is not entitled to relief,  the court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief.

*Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States,* 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F. 3d 352, 354 (6th Cir. 1994). *See also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F. 2d 1039, 1041 (6th Cir.), *cert. denied*, 439 U.S. 988 (1978). To warrant relief for a non-constitutional error, petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F. 3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective

assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the

Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of

counsel:

> First, the defendant must show that counsel's performance was
> deficient. This requires showing that counsel made errors so serious
> that counsel was not functioning as the "counsel" guaranteed the
> defendant by the Sixth Amendment. Second, the defendant must
> show that the deficient performance prejudiced the defense. This
> requires showing that counsel's errors were so serious as to deprive
> the defendant of a fair trial, a trial whose result is reliable. Unless a
> defendant makes both showings, it cannot be said that the conviction
> . . . resulted from a breakdown in the adversary process that renders
> the result unreliable.

*Strickland* 466 U.S. at 687. As with any other claim under § 2255, the burden of proving ineffective

assistance of counsel is on the petitioner. *Virgin Islands v. Nicholas*, 759 F. 2d 1073, 1081 (3d Cir.

1985).

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of

attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S.

at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts

or omissions of counsel that are alleged not to have been the result of reasonable professional

judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance

must be made "from counsel's perspective at the time of the alleged error and in light of all the

circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S.

365, 381 (1986).

The second prong of the *Strickland* test requires the petitioner show counsel's deficient

performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally

unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* Court emphasized that both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697.


### III. Analysis And Discussion

Petitioner raises numerous claims in this motion which he states as follows:

I.     PETITIONER WAS DEPRIVED OF HIS SIXTH AMENDMENT RIGHT TO RECEIVE EFFECTIVE ASSISTANCE OF COUNSEL AT HIS TRIAL, AT HIS SENTENCING AND ON DIRECT APPEAL

     A.     PETITIONER WAS DEPRIVED OF HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL BY HIS TRIAL ATTORNEY'S REFUSAL TO INTERVIEW AND TO CALL DEFENSE WITNESSES; AND BY THE ATTORNEY'S REFUSAL TO PRESENT EVIDENTIARY FACTS TO THE JURY;

B. PETITIONER'S SENTENCING ATTORNEY ROBERT B. DICKERT [sic] FAILURE TO FILE A USSG § 4A1.3 MOTION DEPRIVED PETITIONER OF HIS SIXTH AMENDMENT RIGHT TO RECEIVE EFFECTIVE ASSISTANCE OF COUNSEL; AND

C. PETITIONER WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS APPELLATE ATTORNEY DAVID CAMP FAILED TO BRING THE ABOVE ISSUES TO THE COURT OF APPEALS FOR DETERMINATION;

II. PETITIONER WAS PUNISHED A SECOND TIME FOR AN OFFENSE WHICH HE HAD ALREADY BEEN ONCE CHARGED, INDICTED, PROSECUTED, CONVICTED, AND FULLY PUNISHED;

III. *ALMENDAREZ-TORRES v. U.S.* WAS ERRONEOUSLY DECIDED; AND IS REPUGANT TO THE FIFTH, SIXTH AND EIGHTH AMENDMENTS, AND TO PRIOR DECISIONS OF THE SUPREME COURT;

IV. *ALMENDAREZ-TORRES v. U.S.*, AND 18 USC § 924(e), AND U.S.S.G. § 4A1.1, AND § 4B1.1, AS APPLIED TO PETITIONER DEPRIVED HIM OF HIS RIGHTS GUARANTEED HIM BY THE FIFTH AND SIXTH AND EIGHTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES;

V. ACCUSATIONS OF PRIOR "VIOLENT" OFFENSES, AND OTHER PRIOR CONVICTIONS ARE ELEMENTS OF THE CHARGED OFFENSE;

VI. PUNISHMENT FOR OFFENSE(S) WHICH THE DEFENDANT HAD ALREADY BEEN ONCE FULLY PUNISHED FOR;

VII. *ALMENDAREZ-TORRES v. U.S.*, AND 18 U.S.C.

§ 924(e), AND U.S.S.G. §§ 4A1.1, AND 4B1.1, AS APPLIED TO PETITIONER DOES NOT CONFORM TO THE PRINCIPLES OF THE FIFTH AND SIXTH AMENDMENTS;

VIII.   18 U.S.C. § 924(e) , AND U.S.S.G. §§ 4A1.1 , AND 4B1.1, ARE UNCONSTITUTIONAL VIOLATING THE FIFTH AND SIXTH AMENDMENTS AS APPLIED TO PETITIONER;

IX.   THIS COURT IS CONSTITUTIONALLY MANDATED TO ENFORCE THE CONSTITUTION AND ITS AMENDMENTS; AND TO ENFORCE PETITIONER'S RIGHTS GUARANTEED THEREBY; AND

X.   *ALMENDAREZ-TORRES v U.S.* IS NO LONGER GOOD LAW

## A.   Ineffective Assistance of Counsel

Over the course of the proceedings involving defendant in this case, he was represented by three different court-appointed lawyers- -one through trial, another at sentencing and a third appointed by the Sixth Circuit to represent petitioner on direct appeal. Davis makes allegations of ineffective assistance of counsel against all of them.

### 1.   Trial Counsel

Petitioner makes a very serious and troubling accusation against counsel appointed to represent him at trial. He couches the claim as one of failure to interview and present the testimony of witnesses at trial; in reality, however, he alleges that court-appointed counsel "abandoned him" and "refused" to contact and interview witnesses critical to Davis's defense unless counsel was paid a significant fee by defendant's family. Not only does Davis claim counsel refused to interview potential witnesses, he claims that counsel refused to call as a witness a person named Jeremiah Lovelady even though Lovelady had give counsel a statement "which disputed the

government's allegations against petitioner."  Davis also claims that counsel refused to investigate potentially exculpatory information related to entries in a notebook which the government claimed was a drug ledger.  The ledger was significant because it contained entries for the name "Chody," which the government claimed to be the petitioner, whose nickname was "Shoobie."  Listed beside the name was the phone number 423-791-0070, a number which phone records apparently establish belong to the son of a local police chief.

Davis claims that counsel, without petitioner's knowledge,  demanded $10,000 and was actually paid $5,800 by petitioner's family.  When he did not receive the remaining money owed, counsel, according to Davis, refused to go forward with petitioner's defense.[2]  Davis provides no affidavit, not even his own, to support his allegations.  Even so, given the seriousness of the claim, the Court might grant an evidentiary hearing on the claim if it appeared that the hearing might produce evidence to justify the grant of his motion.  Unfortunately for petitioner, it does not.  Although Davis claims that counsel "abandoned" him, he alleges no facts which would support such a conclusion, and he alleges only in conclusory form that counsel refused to interview witnesses, a claim that fails for the reasons set forth below.  The transcript of the trial also clearly shows that counsel continued to effectively represent Davis through the end of the trial.

First of all, petitioner's claim that counsel refused to interview potentially favorable witnesses fails because petitioner has not pled adequate facts to even warrant a hearing.  As the government argues, he does not identify the potential witnesses by name or otherwise and does not give even minimal information about the nature of their expected testimony.  Even in the face of the

_____

[2]  Davis acknowledges, in his memorandum, that demanding the payment does not, independently, establish ineffective assistance of counsel.  He does allege, however, that the demand "destroyed the attorney-client relationship of trust and confidence which is essential to effective representation."  He does not explain how this could have happened since he claims the demand was made without his knowledge.

government's response about the lack of adequate facts to support his conclusory allegations, Davis fails to provide such facts in his answer to the government response, instead accusing the government of "evad[ing] the issues" concerning counsel's demand for payment. While a failure to interview witnesses can be deficient performance on the part of counsel, *Towns v. Smith*, 395 F.3d 251 (6th Cir. 2005), petitioner's failure to identify these potential witnesses or the nature of their anticipated testimony is fatal to petitioner's claim. Not only does Davis fail to plead sufficient facts to establish a claim of ineffective assistance of counsel for failure to interview witnesses, he can show no prejudice since he makes no attempt to show "a reasonable probability that, but for counsel's unprofessional errors, the result of his trial would have been different." *Strickland*, 466 U.S. at 964.

Next, petitioner claims that counsel failed to call as a witness at trial an individual named Jeremiah Lovelady, a witness he acknowledges counsel did in fact interview. Davis has attached to his motion a transcript of an interview purportedly conducted by counsel on August 29, 2003. Lovelady was a neighbor and friend of Davis and stated that he was never aware of "any illicit drug dealing that Shoobie [3] has done." As the government points out, such testimony was hardly exculpatory. In fact, had counsel called Lovelady to the witness stand to testify that he had known Davis since 1996 and was unaware of any drug dealing, that testimony would have subjected Lovelady to cross-examination about Davis' prior drug dealings, including his 1998 conviction for the sale of drugs.[4]

A decision about whether to call a witness to testify or present evidence is presumed

---

[3] "Shoobie" is a nickname by which Davis was known.

[4] Although Davis's prior conviction was admitted at the trial under Federal Rule of Evidence 404(b), Lovelady's testimony would simply have served to highlight it before the jury.

to be a matter of trial strategy and can constitute ineffective assistance of counsel only when it deprives a defendant of a substantial defense. Davis cannot overcome the presumption "that under the circumstance, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Nor can it be said, given the nature of the evidence against Davis, that there is any reasonable probability that the outcome of the trial would have been different if Lovelady had been called as a defense witness. Indeed, Davis admits as much with the statement in his petition that the testimony of Lovelady "may or may not have caused the jury to acquit the petitioner." [Doc. 848, p. 10].

Lastly, petitioner's claim concerning Lowry, the local police chief's son, falls in the same category. As the government points out, the testimony was not exculpatory and the value of the evidence was otherwise slight, especially in view of the overwhelming nature of the evidence against Davis. Given the deferential standard applied to counsel's decision, the failure to present the evidence was not objectively unreasonable. Even if counsel were somehow deficient as to the matters related to Lowry, petitioner cannot show that he was actually prejudiced and he makes the same concession with respect to this evidence–*i.e.* that it "may or may not" have changed the outcome of the trial. These claims of ineffective assistance of counsel lack merit.

### 2.    Sentencing

Davis makes one claim of ineffective assistance of counsel against counsel who represented him at sentencing.[5]   He faults counsel for his "failure to file a USSG § 4A1.3 motion" at sentencing.   Section 4A1.3(b)(1) permits the district court to depart downward under the

---

[5] Davis's trial counsel was permitted to withdraw after his election as General Sessions and Juvenile Court Judge, Division II, Kingsport, Tennessee, and substitute counsel was appointed.

guidelines in cases where "reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history." More specifically, Davis alleges that the Court "requested counsel to investigate and to file such a motion" and that "[t]he attorney failed to file the Court's requested motion." As support, petitioner relies on *United States v. Hall*, 40 F.Supp.2d 340 (D. Md. 1999) and *Stinson v. United States*, 102 F.Supp.2d 912 (M.D. Tenn. 2000). Although Davis claims that the facts in *Hall* and *Stinson* were "identical" to his, a review of those cases establishes otherwise.

As noted above, Davis was a career offender under the Guidelines because of his prior convictions in 1995 and 1998 of felony drug offenses. On November 22, 1995, Davis pled guilty in state court under two separate docket numbers of four separate sales of cocaine base on February 23, 1995 (1.2 grams), March 25, 1995 (1.4 grams), February 14, 1995 (1.1 grams) and March 1, 1995 (0.2 grams) and was sentenced to eight years in prison. Then, on October 16, 1998, he pled guilty to a sale of cocaine occurring on February 7, 1998, for which he received a sentence of ten years consecutive to the prior eight year sentence, for an effective sentence of 18 years. That was his only criminal history.

Davis's sentencing was postponed numerous times after his conviction in order for him to attempt to cooperate with the government. A sentencing hearing was finally convened on March 5, 2007, and was concluded on March 19, 2007. At the March 5 hearing, the Court heard testimony from DEA Special Agent Michael Templeton who outlined petitioner's attempts to cooperate by providing historical information that did not result in the prosecution or conviction of any other person. Noting that the prior convictions were Davis's only criminal history, the Court expressed its concern that the career offender guidelines resulted in an over-representation of

petitioner's criminal history and resulted in a sentence greatly disparate from that of other co-defendants, took the matter under advisement and gave the parties the opportunity to comment further, [Doc. 786]. The government filed a subsequent memorandum, [Doc. 784], opposing a downward departure but acknowledging the Court's authority to vary downward from the Guidelines range. Davis's counsel did not file any further memorandum.

Although petitioner's attorney did not suggest that grounds existed for a Guidelines departure, the Court nevertheless considered that possibility on its own motion. As the Court stated at the time, "the Court has reviewed the possible grounds for departure under the guidelines and suggested orally on March 5, 2007, that the defendant's career offender status resulted in an over-representation of the defendant's criminal history." [Doc. 786 at 5]. After considering the language of USSG § 4A1.3(b)(1), significant case law on the Guidelines section, the policy considerations underlying the provisions and the circumstances of petitioner's case, the Court concluded that no departure was warranted, [*Id.* at 5-9]. The Court then extensively considered the § 3553(a) factors and imposed a 262 month sentence, [Doc. 801].

In light of the above, the Court need not even consider whether counsel's performance was deficient. Davis can point to no prejudice since the Court fully considered, and rejected, the possibility of a departure under § 4A1.3(b)(1). As noted above, where no prejudice results, the court need not specifically decide whether counsel's performance was deficient.

### 3.     Appellate Counsel

Finally, petitioner claims appellate counsel was ineffective for failing to raise on appeal his claim of ineffective assistance against the attorneys who represented him at trial and sentencing. He refers to these claims as "dead-bang winner[s]" on appeal. The Court disagrees.

As the government points out in its response, counsel cannot be deemed ineffective for failing to present meritless issues, *see Mapes v. Coyle*, 171 F.3d 408, 427 (6th Cir. 1999); *United States v. Martin*, 45 Fed. App'x 378, 381 (6th Cir. 2002), and, as set forth above, the claims lacked merit. More fundamentally, however, counsel cannot be faulted for failing to raise claims of ineffective assistance of counsel on direct appeal in the Sixth Circuit, given the longstanding and firmly established precedent in the Sixth Circuit that ineffective assistance of counsel claims are rarely entertained on direct appeal but are best raised on collateral review. *See e.g., United States v. Tucker*, 90 F.3d 1135, 1143 (6th Cir. 1996). In any event, Davis suffered no prejudice since he has been able to raise these claims in this § 2255 proceeding.

### B.      Double Jeopardy

Although somewhat difficult to decipher, Davis apparently makes a claim that he has been subjected to double jeopardy because his two prior state drug offenses for which "petitioner had already been once charged, indicted, fully prosecuted, and convicted and fully punished for" were used to enhance his punishment under the career offender guideline. As noted above, Davis was convicted of the lesser included offense of conspiracy to distribute and possess with intent to distribute 500 grams or more (but less than 5 kilograms) of cocaine and was subject to a mandatory minimum term of ten years up to life imprisonment. Based on a finding that the offense involved a minimum of three kilograms of cocaine, Davis's offense level under USSG § 2D1.1 was 28 and his criminal history category was IV, resulting in a guidelines range of 110 to 137 months. Because he had prior convictions for sale of schedule II drugs in 1995 and 1998, however, his offense level was increased pursuant to USSG § 4B1.3 to 37 and his criminal history category was enhanced to VI, resulting in a guidelines range of 360 months to life imprisonment.

The government first responds to this claim by arguing that petitioner has procedurally defaulted it. The Court agrees. A claim is procedurally defaulted if it is not raised at trial or on direct appeal and is raised for the first time on collateral review. To avoid the procedural default, petitioner must show either that (1) he had good cause for not raising it earlier and would suffer "actual prejudice" if it were not reviewed, or (2) he is actually innocent. *Bousley v. United States*, 523 U.S. 614, 622 (1998); *United States v. Frady*, 456 U.S. 152, 167-68 (1982); *Peveler v. United States*, 269 F.3d 693 (6th Cir. 2001); *Hicks v. United States*, 258 Fed. App'x 850, 852 (6th Cir. 2007). Petitioner makes no claim of cause or prejudice but does claim that he has not procedurally defaulted the claim because he is "actually innocent" of being a career offender, presumably because of his double jeopardy claim. Aside from the circular nature of his argument, it fails for another reason.

Davis does not argue that he is actually innocent of the offense for which the jury convicted him; rather, he claims that he is "actually innocent in the sense that he was incorrectly categorized as a career offender." [6] The Sixth Circuit has held recently that the actual innocence exception "does not permit prisoners to raise claims about guidelines calculations in a collateral attack." *Gibbs v. United States*, 655 F.3d 473 (6th Cir. 2011). *See also Flahardy v. United States*, 67 F.3d 299, 1995 WL 570925, at *2 (6th Cir. Sept. 27, 1995) (Table) ("the actual innocence exception is not available in the case of a challenge to a non-capital sentence" ); *Black v. United States*, 61 F.3d 903, 1995 WL 445718, *2 (6th Cir. July 26, 1995) (Table) (holding the actual innocence exception does

---

[6] Davis has also filed pleadings which he has entitled "Motion Pursuant To Rule Of Evidence 201(b), (d), (e) & (f) For The Court To Take Judicial Notice And Hold A Hearing On Same" [Doc. 859]. He has also filed a "Motion Requesting The Court To Determine Whether Petitioner Is Actually Innocent Of Being A Lawful Career Offender," [Doc. 860], and "Suggestions In Support Of Petitioner's Actual Innocent Claim Of Being A Career Offender," [Doc. 863]. All these pleadings deal, in one way or another, with Davis's claim that he is actually innocent of being a career offender.

not apply if the petitioner "claims only that he should have received a lesser sentence" and "does not claim that he is actually innocent of the offense of which he was convicted").

Even if not procedurally defaulted, however, petitioner's double jeopardy claim fails. The Double Jeopardy Clause of the Fifth Amendment guarantees three separate constitutional protections: Protection against a second prosecution for the same offense after acquittal, protection against a second prosecution for the same offense after conviction, and protection against multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969); *United States v. Davis*, 306 F.3d 398, 417 (6th Cir. 2002). None of these constitutional harms are present in Davis's case.

Moreover, in general, double jeopardy principles are not applicable to sentencing proceedings. *See Monge v. California*, 524 U.S. 721, 728 (1998); *United States v. Wheeler*, 330 F.3d 407, 413 (6th Cir. 2003) ("double jeopardy principles generally have no application in the sentencing context 'because the determinations at issue do not place a defendant in jeopardy for an offense'") (quoting *Monge*, 524 U.S. at 728). The Supreme Court has repeatedly upheld enhanced penalties for recidivists, *see Monge; Gryger v. Burke*, 334 U.S. 728, 732 (1948), and the Sixth Circuit, applying the Supreme Court ruling, has upheld enhanced sentences based on sentencing guidelines enhancements. *See, e.g., United States v. Mack*, 938 F.2d 678, 681 (6th Cir. 1991) (no double jeopardy violation for sentencing guidelines enhancement of sentence for other criminal activities); *United States v. Gonzalez*, 257 Fed. App'x 932 (6th Cir. 2007), available at 2007 WL 4438131, *13. Sentencing enhancements, which are increased penalties for the latest crime, and not "'a new jeopardy or additional penalty for the earlier crimes[,]'" *id.* (quoting *Gryger*, 334 U.S. at 732), do not implicate any double jeopardy concerns.

In sum, the sentencing enhancement based on Davis's status as a career offender constituted an increase in penalty for the drug crime for which he was convicted in this Court, not a new jeopardy or additional penalty for the prior drug crimes for which he was convicted. Double jeopardy concerns are not implicated here and no constitutional violation occurred.

**C.**   ***Almendarez-Torres v. United States***

All of the remainder of the issues raised by petitioner implicate, in one way or another, the United States Supreme Court decision in *Almendarez-Torres v. United States*, 523 U.S. 224 (1998) and will be dealt with collectively.

In connection with his prior claim, Davis also seems to argue that the maximum sentence he could have received for his conviction in this Court was the top of the advisory guideline range but for his career offender status. He is clearly mistaken. Just as the Court varied downward from the applicable range to a sentence of 262 months, the Court could have imposed the statutory maximum of life imprisonment. What Davis really appears to be arguing, however, is that his prior drug convictions are elements of the offense which must be charged in the indictment and found by a jury beyond a reasonable doubt, relying on a series of state court cases, all decided in the 1800s, and *Apprendi v. New Jersey*, 530 U.S. 466 (2000). In reality, though, the Supreme Court in *Apprendi* rejected Davis's argument, holding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." *Id.* at 490. Thus, Davis's argument that his prior drug convictions must be proven to a jury is meritless. Even if he could make his argument in good faith, *Apprendi* would not require the issue of his prior convictions to be submitted to the jury because *Apprendi* applies only to facts which "increase the penalty beyond the statutory maximum," not the

top of the guidelines range. To the extent Davis argues that USSG § 4B1.1 runs afoul of the Constitution, that argument is also without merit. *See United States v. Sanders*, 406 Fed. App'x 995, 997 (6th Cir. 2011).

By holding that the use of a prior conviction could be used to enhance a penalty without offending the Constitution, the Supreme Court in *Apprendi* was simply reaffirming its prior holding in *Almendarez-Torres*. Davis makes a series of arguments related to the Supreme Court's decision in that case:

- the case was erroneously decided;

- as applied in conjunction with 18 U.S.C. § 924(e)[7] and USSG §§ 4A1.1 and 4B1.1, the decision violates the Fifth and Sixth Amendments as applied to the petitioner; and

- the decision is "no longer good law" and "no judge standing on the Constitution would pretend" it is.

Davis first argues that *Almendarez-Torres* was wrongly decided and asks this Court to ignore it. Regardless of the arguable merits of Davis's argument about the Supreme Court's holding in that case, *Almendarez-Torres* is binding precedent and this Court has no authority to ignore it until the Supreme Court overturns it. A United States District Court has absolutely no authority to overrule the United States Supreme Court. *See Herndon v. Atlantic Automotive Components*, 202 F.3d 268 (Table) (6th Cir. 1999) (neither a district court nor the circuit court of appeals has authority to overrule the Supreme Court). In fact, however, the Supreme Court has reaffirmed its *Almendarez-Torres* holding, not just in *Apprendi*, but also in *Booker v. United States*, 543 U.S. 220, 244 (2005) ("we reaffirm our holding in *Apprendi*: any fact (other than a prior conviction) which is necessary

---

[7] Petitioner's argument as to 18 U.S.C. § 924(e), the Armed Career Criminal Act, is completely lost on the Court. That statute has absolutely no application to this case.

to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury must be admitted by the defendant or proved to a jury beyond a reasonable doubt"), and in *Vretke v. Haley*, 541 U.S. 386, 394 (2004) ("We have not extended *Winship*'s protections [requiring proof of each element of a criminal offense beyond a reasonable doubt] to proof of prior convictions used to support recidivist enhancements."). The Sixth Circuit has likewise affirmed that *Almendarez-Torres* remains good law. *United States v. Martin*, 526 F.3d 926, 942 (6th Cir. 2008) ("*Almendarez-Torres* has not been overruled and is still good law.") (quoting *United States v. Alfaro*, 408 F.3d 204, 211 (5th Cir.), *cert. denied*, 546 U.S. 911, 126 S. Ct. 271, 163 L.Ed. 2d 243 (2005)); *United States v. Sanders*, 406 Fed. App'x 995, 997 (6th Cir. 2011) (*Almendarez-Torres* "remains valid precedent."); *United States v. McKinney*, 187 Fed. App'x 563, 2006 WL 1817832 n.4 (6th Cir. 2006) (*Almendarez-Torres* "was left undisturbed by *Apprendi*, *Blakely* and *Booke*r") (quoting *United States v. Shelton*, 400 F.3d 1325, 1329 (11th Cir. 2005)).

Like the prior claim, Davis has also procedurally defaulted this one. All of Davis's arguments about *Almendarez-Torres* lack merit.

## IV.    Conclusion

For the reasons set forth above, the Court holds petitioner's conviction and sentencing were not in violation of the Constitution or laws of the United States. Accordingly, his motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 will be DENIED and his motion DISMISSED.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth

Circuit Court of Appeals disapproves of the issuance of blanket denials of certificates of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Id.*

A certificate of appealability should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473 (2000). Having examined each of petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not find that the dismissal of Davis's claim was debatable or wrong. Therefore, the Court will **DENY** a certificate of appealibility.

A separate judgment will enter.

ENTER:

<u>s/J. RONNIE GREER</u>
UNITED STATES DISTRICT JUDGE